**Dated: January 08, 2010**
**The following is SO ORDERED:**

_____
George W. Emerson, Jr.
**UNITED STATES BANKRUPTCY JUDGE**

_____

THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TENNESSEE

_____

In re

CAYD HANIBAL II, INC.,                        Case No. 09-26523-E
        Debtor .                              Chapter 11

_____

**ORDER AND MEMORANDUM OPINION**
_____

This matter is before the Court on the motion of Wells Fargo Bank, N.A., as successor by

consolidation to Wells Fargo Bank Minnesota, N.A. as Trustee for the Registered Holders of Credit

Suisse First Boston Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series

2001-CK6 (hereinafter "Wells Fargo") for relief from the automatic stay of 11 U.S.C. § 362.  The

motion was opposed by Chapter 11 Debtor Cayd Hanibal II, Inc.("Debtor") and was heard on December

17, 2009, following which the Court took the matter under advisement.  The Court has jurisdiction over

this matter pursuant to 28 U.S.C. §§ 1134(b) and the General Order of Reference entered in this District.

This is a core proceeding by virtue of 28 U.S.C. § 157(b)(2)(G).

Debtor is the owner of certain real property known as the Summer Trace Apartments located in

Memphis, Shelby County, Tennessee (the "Apartment Complex").  Neither the Debtor nor Wells Fargo

are the original contracting parties as set forth in the underlying documents memorializing the secured

transaction which is the subject of this motion. Debtor purchased the Apartment Complex and assumed

the underlying obligation from Summer Trace Apartments, L.P. The Note and Deed of Trust and

Assignment of Leases were assigned to Wells Fargo from Column Financial, Inc. Neither the amount

or perfected status of the underlying secured obligation are in dispute, however, because the parties have

stipulated that the balance of the debt remaining on the property, and owed to Wells Fargo, is in excess

of $7,200,000.00. The parties further stipulated that there is no equity in the property.

The Debtor filed its voluntary petition seeking relief under Chapter 11 of the Bankruptcy Code

on June 17, 2009. The Debtor scheduled assets consisting of the subject Apartment Complex, $100.00

cash, $20,000.00 in an unidentified checking account, a $15,000.00 security deposit with the local utility

provider, $147,000.00 in rents owed, office furnishings worth $1,000.00 and $100.00 in miscellaneous

personal property. Wells Fargo is the only scheduled secured creditor and the Debtor listed $261,900.00

in unsecured debt.

Shortly after the filing of Debtor's voluntary petition, on June 23, 2009, the Debtor filed an

Adversary Complaint, seeking turnover of the Apartment Complex, which was in the possession of a

receiver appointed by the Shelby County Chancery Court. That same day Wells Fargo filed a motion

seeking to convert the state court receivership into a bankruptcy custodianship and to be excused from

the turnover requirement of 11 U.S.C. § 543 with regard to the Apartment Complex. The parties

resolved Wells Fargo's motion by Agreed Order, entered on the Court's docket on July 24, 2009,

appointing LEDIC Management Group, LLC as custodian over the Debtor's assets. The Debtor

subsequently withdrew its Adversary Complaint.

The filing of the Debtor's voluntary petition constituted the order for relief in the Chapter 11

case pursuant to 11 U.S.C. § 301(b) and also commenced the 120-day exclusivity period provided under

11 U.S.C. § 1121(b), thus providing the Debtor with the exclusive right to file a Plan of reorganization

until October 15, 2009. The Debtor filed its Plan of Reorganization as well as its Disclosure Statement

2

on September 11, 2009.  On October 28, 2009, Wells Fargo filed the instant motion.

11 U.S.C. § 362 (d)(2) provides that

> "On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay - ...(2) with respect to a stay of an act against property under subsection (a) of this section, if - (A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization;"

Because § 362(d)(2) is drafted in the conjunctive, both prongs must be satisfied to grant relief from the stay." *In re Holly's Inc.,* 140 B.R. 643, 697 (Bankr. W.D. Mich. 1992)(citations omitted). Pursuant to 11 U.S.C. § 362(g), in the case *sub judice*, Wells Fargo has the burden of proof on the issue of the Debtor's equity in property and the Debtor has the burden of proof on all other issues, i.e. that the property is necessary to an effective reorganization.  *See, e.g., id.*

Because the parties stipulated that there is no equity in the property, the burden shifts to the Debtor to prove that 11 U.S.C. § 362(d)(2)(B) has not been satisfied.  In *United Sav. Ass'n of Texas v. Timber of Inwood Forest Assocs., Ltd.,* 484 U.S. 365, 108 S.Ct. 626 (1988), the Supreme Court stated that to prove that the collateral which is the subject of a motion for relief is necessary to an effective reorganization, the Debtor must show that "the property is essential for an effective reorganization that is in prospect.  This means, as many lower courts...have properly said, that there must be a reasonable possibility of a successful reorganization within a reasonable time." *Id.* at 633, 108 S.Ct. at 375-376.

The burden on the Debtor has been likened to a "moving target," a "sliding scale" or a "balancing test" with the burden on the Debtor's part becoming more stringent in the later stages of the Chapter 11 case. *In re Holly's, Inc.,* at 699; *See also In re Creekstone Apartments Associates, L.P.,* 168 B.R. 639 (Bankr. M.D. Tenn. 1994)(citations omitted).  The burden is on the Debtor to provide

> "the most stringent and convincing showing under § 362(d)(2)(B) after the expiration of the exclusivity period to file a plan and obtain acceptance thereof.  The evidence must be greater than 'plausible' or 'probable.'  After the expiration of the exclusivity period or periods, to satisfy § 362(d)(2)(B), the debtor must offer sufficient evidence to indicate that a successful reorganization within a reasonable time is

'assured.'" *In re Holly's,* 140 B.R. 643, 702 (Bankr. W.D. Mich. 1992).

"'Assured' is defined as 'characterized by certainty or security...beyond doubt or question: unquestionable, certain.'" *Id.* (citation omitted).

At the hearing on the instant motion, Mr. Andrew Denson, president and majority shareholder of the Debtor, testified on the Debtor's behalf as to the Chapter 11 Plan's contents and proposed method for repayment. Mr. Denson testified that, pursuant to the Plan, the Debtor intends to pay Wells Fargo $7,200,000.00 at the contract rate of interest over a period of ten years. The Debtor did not present proof as to the contract rate of interest. As noted before, the parties stipulated as to the authenticity and accuracy of the Promissory Note, Deed of Trust, Assignment of Leases and Rents and Assumption Agreement. Pursuant to the Promissory Note, the borrower promised to repay $6,425,000.00 in principal at the rate of 7.08% per annum. *See Collective Ex. 1. p.1.*

Mr. Denson further testified that the Debtor's Plan contemplated payments to Wells Fargo to begin within thirty days of confirmation, although he believed that there would not be any funds available to pay Wells Fargo for at least six months to one year from the date of confirmation. When questioned further as to the exact calculation of the payment, Mr. Denson testified that he believed that the Plan calculation would result in a monthly payment of approximately $47,000.00 to Wells Fargo, although he admitted that $47,000.00 actually only represented the payment of interest and the Plan contemplated a fully amortized repayment schedule which would include principal.

Mr. Denson also admitted that the proposed $47,000.00 monthly payment did not include any escrowed funds for payment of insurance and taxes nor did it include any reserve for repairs to be made during the 10-year Plan period. While it is not necessary for the Court to decide the amount of funds that will be required for repairs to the real property over the life of the Plan, the Court notes that based on the testimony of Betsy Waugh, representative of the court-appointed custodian of the property, as well as Mr. Denson, the Debtor's representative, the property is currently in a state of significant disrepair and will, in fact, require repairs and maintenance over the life of the Plan.

Mr. Denson testified that he had obtained approximately $200,000.00 in personal loans which he intended to utilize to rehabilitate individual units which would then generate sufficient rents to rehabilitate more units, with the pattern being continued until some time in the future when the Debtor could generate sufficient rents to service the debt to Wells Fargo.  The Debtor offered no financial documents or projections to support Mr. Denson's testimony with regard to the Debtor's potential operating results going forward under its Chapter 11 Plan.

Ms. Waugh, a representative of the custodian who is currently in charge of day-to-day operations of the Apartment Complex, testified that currently the Debtor is unable to pay its existing vendors and there are no payments being made on Wells Fargo's secured debt due to the failure of the property to generate sufficient funds to do so.

The Court finds that the Debtor has failed to prove that there is a "reasonable possibility of a successful reorganization within a reasonable time" as is necessary to defeat a motion for relief from the automatic stay brought pursuant to 11 U.S.C. § 362(d)(2).  *United Sav. Ass'n of Texas v. Timber of Inwood Forest Assocs., Ltd.,* 484 U.S. 365, 108 S.Ct. 626 (1988).  The Court was not presented with any evidence of the Debtor's current cash flow, potential gross (or net) rents, or operating expenses.  The Debtor did not present sufficient evidence for the Court to find that the Complex is capable of generating a sufficient cash flow to enable the Debtor to successfully reorganize.  The Debtor's own representative testified that the monthly payments contemplated by the Plan as filed were inadequate to repay Wells Fargo over the life of the ten-year Plan.

At any stage of a Chapter 11 case it is generally impossible to overcome 11 U.S.C. § 362(b)(2)(B) if "(1) the only evidence offered is debtor's chimerical opinion that it can successfully successfully reorganize; or (2) the evidence offered indicates the debtor is unable to propose a meaningful plan." *In re Holly's, Inc.,* 140 B.R. at 703.  Here, the Debtor has not offered anything more than the opinion testimony of its non-resident majority stockholder and president regarding the mechanics by which the Debtor currently operates and might prospectively reorganize.

5

While the Court does not doubt that Mr. Denson is sincere and honest in his belief that the Debtor has the ability to become profitable, his testimony was woefully insufficient to be characterized as a credible financial forecast of the Debtor's future operations.

Based upon the foregoing, Wells Fargo's motion for relief from the automatic stay should be and is hereby granted pursuant to 11 U.S.C. § 362(d)(2).

IT IS SO ORDERED.